O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAMES "JIM" BROWN,

Plaintiff,

vs.

ELECTRONIC ARTS, INC. a Delaware Corporation; and DOES 1-50,

Defendants.

Case No. 2:09-cv-01598-FMC-RZx

ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND ORDER DISMISSING DEFENDANT'S MOTION TO STRIKE AS MOOT

This matter is before the Court on Defendant's Motion to Dismiss (docket no. 28 ) pursuant to Federal Rule of Civil Procedure 12(b)(6), and Defendant's Motion to Strike (docket no. 29), both filed August 7, 2009. The Court has read and considered the moving, opposition, and reply documents submitted in connection with these motions. The Court deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for October 5, 2009, is removed from the Court's calendar. For the reasons and in the manner set forth below, Defendant's Motion to Dismiss is GRANTED in part.

//

//

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of a video game company's alleged unauthorized use of a celebrity's likeness in a series of video games. Plaintiff James "Jim" Brown ("Brown") is a retired professional football player and a member of the collegiate and NFL football Halls of Fame. He is also an actor and activist. Amended Complaint ("AC") ¶¶ 9-14. Defendant Electronic Arts, Inc. ("EA") develops and publishes video games, including the popular *Madden NFL* series. Brown alleges that EA has been publishing *Madden NFL* games since 1989, with great commercial success. *Id.* at ¶ 24.

Each *Madden NFL* game contains up to 170 virtual teams and approximately 1,500 virtual players.[1] *See, e.g.*, Strauser Decl. ¶ 7 (citing Exhibits A-H). EA has a licencing agreement with the NFL (*Id.* at ¶ 11), but does not have one with Brown. AC ¶ 18.

In the games, virtual players on current NFL teams wear the names and numbers of real-life players, whereas players on historical teams are anonymous, represented by numbers and roster positions. Strauser Decl. ¶ 7. The players compete in virtual stadiums, where they are cheered by virtual fans and coached by virtual coaches; all these are designed by the games' graphic artists. *Id.* at ¶ 5. A soundtrack, voice commentary, and sound effects accompany the action. *Id.*

---

[1] Brown's Amended Complaint did not include the games as exhibits. In ruling on a 12(b)(6) motion, a court generally cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). However, under the "incorporation by reference" doctrine, a court may consider additional material if: the plaintiff's claims depend on the contents of a document; the defendant attaches the documents to its motion to dismiss; and the parties do not dispute the documents' authenticity. *Id.* Here, Brown alleges that the *Madden NFL* games used his likeness. Brown's claims depend on the games' content. EA has attached the games to its motion, and Brown has not challenged the games' authenticity. Thus, the Court will consider the games' content under the "incorporation by reference" doctrine.

On July 22, 2009, Brown filed his First Amended Complaint. Therein, Brown asserts an unfair competition claim under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), under a theory of false endorsement. He also sues for invasion of privacy under California common law and Cal. Civ. Code §3344, and for unlawful business practices in violation of Cal. Bus. & Prof. Code 17200 *et seq*. Brown alleges that EA misappropriated his name, identity, and likeness by including him in the games as a player on two "historic" teams: the 1965 Cleveland Browns team and the All Browns team. The character who purportedly represents Brown in the game is anonymous, and wears jersey number 37; Brown wore number 32. Brown alleges that EA altered the jersey numbers and made other superficial changes to the character intentionally, to avoid liability. AC ¶ 22. Brown and his doppelgänger have "nearly identical" statistics. *Id.*

On August 7, 2009, EA filed a Motion to Dismiss all counts of the Amended Complaint (docket no. 28) and a concurrent Motion to Strike the three non-federal causes of action (docket no. 29). Brown filed oppositions to both motions on August 31, 2009, and EA replied on September 14, 2009. Here, the Court will address EA's Motion to Dismiss only as to Brown's Lanham Act count.

**II. STANDARD OF LAW**

Rule 12(b)(6) permits a defendant to seek dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal is proper where a complaint lacks a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). All material factual allegations in the complaint are assumed to be true and construed in the light most favorable to the plaintiff. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1229 (9th Cir. 2004) ("The general rule for 12(b)(6) motions is that allegations of material fact made in the complaint should

be taken as true and construed in the light most favorable to the plaintiff.") (citing *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000)).

However, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994) (internal citations omitted); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

If the Court dismisses the complaint, it must decide whether to grant leave to amend. Denial of leave to amend is "improper unless it is clear that the complaint could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005) (citation omitted). However, the district court's discretion to deny leave to amend is decidedly broader where the plaintiff has previously filed an amended complaint. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) ("Where the plaintiff has previously filed an amended complaint, as Miller has done here, the district court's discretion to deny leave to amend is 'particularly broad.'").

**III. DISCUSSION**

The first issue before the Court is Brown's sole federal cause of action: the alleged violation of Lanham Act Section 43(a), as codified in 15 U.S.C. 1125(a).

When, as here, a celebrity brings a false endorsement suit under Section 43(a), his "celebrity persona" functions as the "mark." *See White v. Samsung Electronics America, Inc.*, 971 F.2d 1395, 1399-1400 (9th Cir. 1992) ("In cases involving confusion over endorsement by a celebrity plaintiff, 'mark' means the

celebrity's persona."). "A false endorsement claim based on the unauthorized use of a celebrity's identity is a type of false association claim, for it alleges the misuse of a trademark, i.e., a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Waits v. Frito Lay, Inc.*, 978 F. 2d 1093, 1110 (9th Cir. 1992).

While maintaining that it did not use Brown's celebrity persona or likeness in the *Madden NFL* games, EA also argues that the First Amendment provides a complete defense to the alleged Lanham Act violation.[2] The First Amendment can indeed provide a complete defense to a Lanham Act false endorsement claim. *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1101 (9th Cir. 2008) .

As a preliminary matter, it is important to establish the type of speech at issue; the type of speech determines the appropriate First Amendment test. For example, non-commercial speech receives more robust constitutional protection. *See Hoffman v. Capital Cities/ABC Inc.*, 255 F. 3d 1180, 1184 (9th Cir. 2000).

It is well established that "video games are a form of expression protected by the First Amendment." *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 958 (9th Cir. 2009); *accord, Kirby v. Sega of America,* 144 Cal. App. 4th 47, 58 (Ct. App. Cal. 2006) ("Video games are expressive works entitled to as much First Amendment protection as the most profound literature"); *Interactive Digital Software Ass'n v. St. Louis*, 329 F.3d 954, 956-58 (8th Cir. 2003) (holding that "violent" video games are a protected form of speech).

---

[2] To proceed on his Lanham Act claim, Brown would have to demonstrate that EA used his likeness. However, even if Brown can meet that burden at a later point, the operative complaint fails to state a remediable Lanham Act claim because, as described below, it fails on First Amendment grounds. Thus, the Court will proceed with its inquiry assuming, *arguendo*, that EA used Brown's likeness.

The Ninth Circuit's decision in *E.S.S.* is especially instructive on the interplay of Lanham Act claims and the First Amendment in the context of video games. *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir. 2008). The game at issue was *Grand Theft Auto: San Andreas*, which contains parodies of existing urban environments. Players interact with these virtual environments as they complete a series of storyline-based missions. *Id.* at 1097. The parties agreed that the video game was expressive speech. *Id.* at 1099. To evaluate the plaintiff's Lanham Act claim in *E.S.S.*, the court applied the *Rogers v. Grimaldi* test,[3] which this Circuit has adopted from the Second Circuit. Under *Rogers,* a Lanham Act claim asserted against the creator of an expressive work can succeed only if the "public interest in avoiding consumer confusion *outweighs* the public interest in free expression." *Id.* at 1099 (quotations and citations omitted, emphasis in original).

The *Rogers* test has two prongs. The first prong requires that the defendant's use of plaintiff's trademark be relevant to the underlying work: "the level of relevance must merely be above zero." *Id.* at 1100.

If the first prong is satisfied, the Lanham Act claim is still precluded unless the use explicitly misleads consumers about the source or content of the work. *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002) (quoting *Rogers,* 875 F.2d at 999). Even where there is a risk that consumers will wrongly presume that the celebrity endorsed the work, the risk may be outweighed by public interest in artistic expression. *Rogers*, 875 F.2d at 1001.

The Ninth Circuit has confirmed that the *Rogers* analysis is appropriate where the trademark (or, in the case of a celebrity, likeness) appears in the body of the work. *E.S.S.,* 547 F.3d at 1099 ("Although this test traditionally applies to uses of a trademark in the title of an artistic work, there is no principled reason

---

[3] *Rogers v. Grimaldi*, 875 F.2d 994 (2nd Cir. 1989).

why it ought not also apply to the use of a trademark in the body of the work.")

Here, the *Madden NFL* series of sports-based games is creative in different ways than some of the other video games that courts have held to be artistic speech. For example, in *E.S.S.*, the game contained creative elements such as a story line and satires of real cities. However, that difference is not dispositive. Video games do not have to be stories to qualify as expressive works. *See Romantics v. Activision Publ'g, Inc.*, 574 F. Supp. 2d 758, 765-66 (E.D. Mich. 2008).

The *Madden* games contain numerous creative elements. Although the games seek to realistically replicate NFL football, they use creative means to achieve that goal. The games contain virtual stadiums, athletes, coaches, fans, sound effects, music, and commentary, all of which are created or compiled by the games' designers. By manipulating virtual athletes and franchises as they wish, video game players interact with the designers' creative interpretation of real-world NFL game play. The football season can itself become a storyline in *Madden NFL*, as game players navigate their chosen athletes and franchises towards victory.

That the designers used a realistic sports theme to express their creativity, as opposed to urban adventure (*E.S.S.*) or music (*Romantics*), does not change the fact that the *Madden NFL* games manifest their designers' creative vision. The *Madden NFL* video games are expressive works, akin to an expressive painting that depicts celebrity athletes of past and present in a realistic sporting environment. *See ETW Corp. v. Jireh Publ'g*, 332 F.3d 915 (6th Cir. 2003) (First Amendment provided complete defense to Section 43(a) claim where expressive painting depicted Tiger Woods surrounded by golf legends at Augusta).

As expressive works, the *Madden NFL* games' use of Brown's likeness is

subject to the *Rogers* two-prong test.[4] The first prong requires that the defendant's use of plaintiff's trademark be relevant to the underlying work. "[T]he level of relevance must merely be above zero." *E.S.S.*, 547 F.3d at 1100.

The *Madden NFL* games are about NFL football. Brown is a legendary NFL player: the best ever, according to some journalists. AC ¶ 3. Use of a legendary NFL player's likeness in a game about NFL football is clearly relevant. Thus, even assuming that all material factual allegations in Brown's complaint are true, and viewing them in the light most favorable to Brown, EA's use of Brown's likeness in the *Madden NFL* games was not completely irrelevant to the games' content.

The second prong of *Rogers* requires the Court to evaluate whether EA's use of Brown's likeness explicitly misleads consumers as to the source or content of the work. Mere use of the likeness, without more, is insufficient to make the use explicitly misleading. *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002). The relevant inquiry is whether people playing *Madden NFL* would be misled into thinking that Brown is somehow behind the game or sponsors the product. *See E.S.S.*, 547 F.3d at 1100.

The *Madden NFL* character that Brown alleges bears his likeness is one of thousands of virtual athletes in the games. Unlike most of the other characters, this virtual athlete is anonymous: he is identified only by a jersey number and his roster position as a running back. The character, and Brown's name, are not depicted on the games' packaging or in their advertising. Strauser Decl. ¶ 9. In his papers, Brown has not pointed to any *Madden NFL* promotional materials that feature his name or likeness.[5]

---

[4] Again, the Court's assumption that EA used Brown's likeness is *arguendo*.

[5] Brown submitted exhibits that purport to show that EA used Brown's name to promote *Madden NFL*. EA has objected to these exhibits. Without reaching the

Although a *Madden NFL* consumer could assume from the circumstances that player number 37 represents Brown, it would require a leap of logic to conclude that the anonymous, mis-numbered player's presence in the games equates to Brown's endorsement of the games. Moreover, the virtual player's mere presence in *Madden NFL* does not constitute an *explicit* attempt to convince consumers the Brown endorsed the games.[6]

Assuming that all material factual allegations in the Amended Complaint are true, and viewing them in the light most favorable to Brown, EA's use of Brown's likeness could not constitute an explicit attempt to signify that Brown endorsed the games. Thus, even if the games do use Brown's likeness, that use is protected by the First Amendment. This outcome is consistent with the Lanham Act's purposes. Section 43(a) provides a remedy against consumer confusion as to celebrities' endorsements of a product, and allows celebrities to protect property interests in their personas. *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992). Here, where there are no explicit representations of endorsement to cause consumer confusion, and where important First Amendment interests are implicated, there lies no remedy under Section 43(a) of the Lanham Act.

The court has not considered the merits of Brown's non-Lanham Act claims. Because the Lanham Act claim does not survive the dismissal motion, the Court declines to exercise supplemental jurisdiction over Brown's remaining state and common law claims. *See Herman Family Revocable Trust v. Teddy Bear* , 254 F.3d 802, 805 (9th Cir. 2001) (explaining that the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), "makes clear that supplemental jurisdiction may

---

merit of these objections the Court finds that, even if admissible and interpreted in the light most favorable to Brown, the exhibits simply do not stand for the proposition that EA used Brown's name or likeness to promote *Madden NFL*.

[6]Mere inclusion of a celebrity's likeness in the work is insufficient to satisfy the second prong of *Rogers*. *E.S.S.*, 547 F.3d at 1100.

only be invoked when the district court has a hook of original jurisdiction on which to hang it").

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (docket no. 28) is GRANTED WITH PREJUDICE as to the Lanham Act claim in Plaintiff's First Amended Complaint (docket no. 27). Additionally, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state and common law claims and DISMISSES THOSE CLAIMS WITHOUT PREJUDICE to the Plaintiff's right to pursue those claims in another venue. Finally, Defendant's Motion to Strike (docket no. 29) is DENIED AS MOOT.

**IT IS SO ORDERED.**

Dated: September 23, 2009.

Florence-Marie Cooper

FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT